# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **LEVELAND BROWN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | **C.A. No. 15-cv-00437** |
| | : | |
| **WEST WARWICK HOUSING AUTHORITY,** | : | |
| **CINDY WHITE OVERTON, individually and in her** | : | |
| **capacity as partner of D&V/MainSail; RICHARD** | : | |
| **LECO, individually and in his capacity as partner of** | : | |
| **D&V/MainSail, KATIE FAGAN, AND** | : | |
| **MARC STARLING, individually and in his official** | : | |
| **capacity as executive director of the** | : | |
| **WEST WARWICK HOUSING AUTHORITY** | : | |
| **Defendants.** | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTIONS TO DISMISS

The Plaintiff, Leveland Brown, objects to the Motion to Dismiss filed on January 5, 2016,

by Defendants Cindy White Overton ("Overton"), Richard Leco ("Leco"), and Katie Fagan

("Fagan"). Overton, Leco, and Fagan seemingly move to dismiss the Plaintiff's Verified

Amended Complaint ("VAC") in its entirety, but these Defendants only presented arguments on

Counts Three, Four, Five, Six, Nine, and Ten. Also Overton, Leco, and Fagan moved to dismiss

the claim of punitive damages related to Counts Nine and Ten.

Further, Plaintiff objects to the Motion to Dismiss filed on January 19, 2016, by

Defendants West Warwick Housing Authority ("WWHA") and Marc Starling ("Starling").

WWHA joins the arguments of Overton, Leco, and Fagan, and moves to dismiss Counts Three

Six, Nine and Ten only. Starling joins the arguments of Overton, Leco, and Fagan, and moves to

dismiss Counts Three, Four, Five, Six, Nine and Ten.

Plaintiff submits that both Motions to Dismiss are without merit as Plaintiff pled a legally

sufficient claim for relief in each of the counts of his Verified Amended Complaint. However,

Plaintiff concedes that his claims for damages under Title VI of the Civil Rights Act of 1964 and the Rehabilitation Act may be dismissed as to certain individual defendants as explained below. Also the Court may dismiss Counts Seven and Eight against Defendants Overton, Leco, and Fagan, as these counts are not directed against those Defendants.

## COUNTER-STATEMENT OF FACTS PERTINENT TO PLAINTIFF'S OBJECTION

In this action, Plaintiff seeks redress for substantial harm, including the termination of his Section 8 Voucher, caused by the Defendants' scheme to punish Plaintiff, a low-income, disabled black man, for trying to start a food truck business. First, Defendants attempted to extort the voucher from Plaintiff under threat of criminal prosecution. When that attempt failed, Defendants modified their plan and conducted a sham hearing by a trusted subordinate where the termination of Plaintiff's voucher for "fraudulent income" was upheld without evidence.  Then, Defendants continued to punish Plaintiff by referring him to federal and state governmental agencies for investigation for fraud even though there was no evidence of fraud. After this action was filed, the Defendants modified their scheme again and improperly terminated the Plaintiff's voucher for the purported failure to supply information that Plaintiff and his counsel endeavored to supply. However, the purported basis for the termination was groundless, given that Plaintiff earned no income from the food truck business and even if he had, that income was to be disregarded for purposes of calculating his share of the rent.

The Plaintiff is a disabled black man. VAC ¶ 7. As a result of his disability, he is a low-income individual, and his only source of income is Supplemental Security Income of $905.00 per month and food stamps of $146.00 per month. VAC ¶¶ 49, 54, 56.

The West Warwick Housing Authority (WWHA) administers the Housing Choice Voucher program in the town of West Warwick, whereby the WWHA, using funds from the

United States Department of Housing and Urban Development ("HUD"), pays a portion of its voucher recipients' monthly rent directly to landlords. VAC ¶¶ 20-25. The Plaintiff is one of the voucher recipients whose monthly rent is paid by the WWHA. VAC ¶¶ 50-51. The WWHA hired a private entity, D&V/MainSail, which is a partnership operated by Overton and Leco, to act as the Executive Director of WWHA. VAC ¶¶ 11, 14. D&V/Mainsail appointed Fagan to act as its representative in the position of Executive Director of the WWHA. VAC ¶ 15. Thus, Overton and Leco through their partnership D&V/MainSail, and Fagan, acted jointly with and under color of state law, namely, the authority of the WWHA, when performing the actions described below. VAC ¶¶ 16, 18. On or about September 1, 2015, Starling became the Executive Director of the WWHA. VAC ¶ 19. According to the Defendant's Memorandum of Law in Support of their Motion to Dismiss (Docket Entry 18-1; hereafter "Def. Mem."), Overton's, Leco's, and Fagan's involvements with WWHA may have ended on September 30, 2015. Def. Mem. at 5. Overton and Leco continue to influence many public housing authorities throughout New England. VAC ¶ 13.

On June 17, 2015, Fagan received an anonymous complaint that the Plaintiff was committing fraud on the WWHA. VAC ¶¶ 67-69. Rather than following the written procedures of the Administrative Plan of the WWHA ("WWHA Admin Plan"), Fagan made a phone call to either Overton or Leco and, with the joint effort of the WWHA, agreed on a plan to defame the Plaintiff, extort the Plaintiff into relinquishing his constitutionally protected Housing Choice Voucher, and deprive the Plaintiff of his Housing Choice Voucher in violation of HUD regulations and constitutional requirements. VAC ¶¶ 70, 139, 140, 149, 184-186, 191-194. The Plaintiff alleges that the actions taken in accordance with this plan, which actions deviated from the WWHA Admin Plan, were intended to discriminate against him on the basis of race and/or

handicap, and/or had the effect of disproportionately impacting him due to his race and/or

handicap. *See* VAC at Counts Four, Five, and Six.

The Defendants' plan, likely devised in that phone call on June 17 between Fagan and

either Overton or Leco, was to coerce Plaintiff to voluntarily relinquish his Housing Choice

Voucher by threatening Plaintiff with criminal prosecution, without notice, without a reason for

termination, without evidence, and without a hearing. VAC ¶¶ 70, 74, 78. The Defendants,

specifically Fagan and another employee of WWHA, began implementing the plan with a phone

call to the Plaintiff, asking him to come to WWHA's office. VAC ¶ 71. When Plaintiff told

Fagan he could not come immediately, Fagan and the other WWHA employee drove to Sweet

Daddy's Chicken, the food truck where the Plaintiff was working. VAC ¶ 72-73. At the food

truck while Plaintiff was working, Fagan and the other employee of WWHA publicly accused

the Plaintiff of committing fraud and threatened to have Plaintiff put in jail unless he

relinquished his voucher. VAC ¶ 74. Fagan ordered the Plaintiff to come to WWHA's office

immediately. VAC ¶ 75. When the Plaintiff arrived at WWHA's office, Fagan and the other

WWHA employee continued to execute their plan by threatening the Plaintiff with criminal

prosecution for fraud and to have him put in jail unless he immediately voluntarily relinquished

his voucher. VAC ¶ 79.

Initially the plan appeared to succeed. Plaintiff was scared by Defendants' threats, and he

complied with their request to write a letter relinquishing his voucher. VAC ¶ 82. However, on

June 19, 2015, Plaintiff wrote a letter to Defendants revoking his relinquishment of his Section 8

Voucher and requesting a hearing to challenge the voucher termination. VAC ¶ 83. Since

Plaintiff was entitled to a hearing conducted by a third party before his voucher could be taken

away, *see* 24 C.F.R. § 982.555, Defendants entered the next phase of their plan by selecting a

4

hearing officer who was a subordinate of Leco who would uphold the termination of Plaintiff's Section 8 Voucher.

Leco, a partner in D&V/MainSail, is also the vice-chair of the commissioners of the North Attleborough Housing Authority. VAC ¶ 89. In late 2014, when the North Attleborough Housing Authority needed to hire an executive director, it retained D&V/MainSail to conduct that search. VAC at ¶ 90. The North Attleborough Housing Authority, with the assistance of D&V/MainSail, hired Daniel Ouellette to be its executive director. VAC ¶ 91. Defendants selected Ouellette to be the hearing officer to decide the fate of the Plaintiff's voucher. VAC ¶ 93, 102, and 105. At the outset of the hearing, before evidence was taken, Ouelette determined that WWHA had sufficient evidence to decide that Plaintiff earned income he failed to report to WWHA. VAC ¶ 96. Despite the fact that Plaintiff submitted profit and loss statements showing his business was operating at a loss and despite WWHA's providing no evidence to the contrary, Ouellette dutifully upheld the WWHA's termination of the Plaintiff's voucher. VAC ¶ 107. In so doing, Ouellette noted that "the evidence against [Plaintiff] was minimal." VAC ¶ 106. Nonetheless, Ouellette concluded that WWHA collected sufficient evidence to take away Plaintiff's Section 8 Voucher. VAC ¶ 108.

After the Plaintiff filed this case and after Overton's, Leco's, and Fagan's involvements with WWHA supposedly ended, WWHA restored the Plaintiff's voucher in November 2015, a full month after the termination in September 30, 2015. VAC ¶ 122. However, WWHA's restoration of Plaintiff's Section 8 Voucher was merely a continuation of the plan to terminate his Section 8 Voucher, just under a new strategy. Simultaneously with restoring Plaintiff's voucher, WWHA and Starling required Plaintiff to attend a meeting purportedly for an interim reexamination of his income and assets on shorter notice than was required by the WWHA

Admin Plan. VAC ¶¶ 122, 132. The letter demanding Plaintiff's presence did not provide a clear list of documents for Plaintiff to provide, state what forms he needed to sign, or otherwise inform Plaintiff what he needed to do to comply with the request of WWHA and Starling. VAC ¶131. Plaintiff's counsel tried to comply with reasonable requests for documents, but WWHA and Starling did not provide forms that needed to be signed or documents that Plaintiff needed to provide. VAC ¶¶ 123-124. Instead, WWHA and Starling proceeded to terminate Plaintiff's Section 8 Voucher as of December 1, 2015, even though WWHA's counsel had agreed with Plaintiff's counsel for an exchange of documents upon request. VAC ¶¶ 126-129. This second termination was, again, made without proper notice, without an opportunity for a hearing, and in violation of federal regulations and the WWHA Admin Plan. See VAC ¶¶ 130-136. The WWHA has since paid Plaintiff's rental subsidy for December and all subsequent months, but has neither calculated a higher rent payment for Plaintiff to pay as would be expected if he had an increase in income, nor required Plaintiff to sign documents that would be expected in a normal reexamination of income and assets.

## DISCUSSION

### I.   Standard of Review.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), "only a complaint that states a plausible claim for relief survives [the] motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009). However, "Rule 12(b)(6) is forgiving," *Regus v. Citibank (South Dakota), N.A.*, 2010 U.S. Dist. LEXIS 71575, *7, 2010 (D.R.I. June 22, 2010), and "[d]ismissal with prejudice is a drastic action, and one of last resort." *Miller v. Advocare, LLC*, 2013 U.S. Dist. LEXIS 71451, *12, 2013 (D.N.J. May 21, 2013) (internal citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Jefferson v. Gates*, 2010 U.S. Dist. LEXIS 75010, at *17, (D.R.I. July 2, 2010) citing *Ashcroft*, 556 U.S. at 678. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Regus*, 2010 U.S. Dist. LEXIS 71575, at *6-7, (internal punctuation omitted) (citing *Ashcroft*, 556 U.S. at 678).

In ruling on the motion, however, "the Court must view the stated facts in the light most favorable to the pleader." *Henry v. Sheffield*, 749 F. Supp. 2d 3, 17 (D.R.I. 2010); see also, *In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 51 (1st Cir. 2005). "For pleading purposes, circumstantial evidence often suffices to clarify 'a protean issue such as an actor's motive or intent.'" *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 56 (1st Cir. 2013) (citing *Anthony v. Sundlun*, 952 F.2d 603, 605 (1st Cir. 1991)). Significantly, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (U.S. 2007) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), and a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations and punctuation omitted). When the complaint sets forth "well-pleaded factual allegations, a court should assume their veracity." *Ashcroft*, 556 U.S. at 664.

Also, in ruling on a motion to dismiss, the defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). That is true even when a plaintiff fails to respond at all to a Rule 12(b)(6) dismissal motion. *Branch Banking & Tr. Co. v. Howard*, No. 12-0175-WS-N, 2013 U.S. Dist. LEXIS 6805, at *4-5 (S.D. Ala. Jan. 16, 2013) ("[The] lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of

such Motion on an abandonment theory. . . . Rather, [the] burden as movant [is] to establish its

entitlement to relief under Rule 12(b)(6)).

**I.      Defendants Failed to Satisfy their Burden of Proving Plaintiff's Claims are Moot, and their Burden to Obtain Dismissal of Counts One, Two, Seven, and, Eight.**

Although the caption for Defendants Overton, Leco and Fagan's Motion to Dismiss

Plaintiff's VAC appears to be directed at Plaintiff's entire VAC, Defendants failed to address

Counts One and Two in their Motion. As Defendants did not provide any arguments in support

of Dismissing Counts One and Two, they failed to meet their burden, and, therefore, Defendants'

Motion to Dismiss Counts One and Two should be denied. *Hedges v. United States*, supra, 404

F.3d at 750.

Although Defendants Overton, Leco, and Fagan, state that Plaintiff's VAC should be

dismissed as moot, Defendants provide no arguments in support of their contention that

Plaintiff's VAC should be dismissed based on mootness. Def. Memo. at 6. As Defendants did

not make any arguments in support of dismissal based on mootness, they failed to meet their

burden, and their Motion to Dismiss based on mootness should be denied. *Hedges, supra*, at 750.

To the extent that Defendants WWHA and Starling rely on Overton, Leco, and Fagan's

arguments in support of their Motion to Dismiss, their Motion should be denied. *Id*.

As Defendants Overton, Leco, and Fagan correctly assert, Counts VII and VIII are not

addressed to them, and, therefore, do not state a claim for relief which those Defendants can

redress. Count VII and VIII may be dismissed against Overton, Leco, and Fagan.

Although Defendants WWHA and Starling Moved to Dismiss Counts VII and  VIII,

Defendants failed to provide any arguments in support of dismissing Counts VII and VIII, and

instead "adopt[ed] and incorporate[d] the points and reasoning set forth in co-defendants'

supporting memorandum." Starling MTD ¶ 3. Defendants Overton, Leco and Fagan's only

argument was that Counts VII and VIII are not directed towards them. Counts VII and VIII are

directed at Defendants Starling and WWHA, and Defendants Starling and WWHA provide no

additional arguments in support of their Motion to Dismiss Counts VII and VII. Defendants

WWHA and Starling, therefore, failed to satisfy their burden as the moving party, and, therefore,

their Motion to Dismiss as to Counts VII and VIII should be denied. *Hedges*, *supra*, at 750.

## II.      Count Three (Conspiracy to Deprive Another of Civil Rights) Alleges a Legally Sufficient Claim

The First Circuit has held that a claim under § 1985(3) must contain four elements. First,

the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive

the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance

of the conspiracy; and finally, he must show either injury to person or property, or a deprivation

of a constitutionally protected right. *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st

Cir. 2008) (citing *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). In addition, "the statute's

references to 'equal protection' and 'equal privileges and immunities under the laws' to signify

that a plaintiff may recover thereunder only when the conspiratorial conduct of which he

complains is propelled by 'some racial, or perhaps otherwise class-based, invidiously

discriminatory animus.'" *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (citing *Griffin v.

Breckenridge*, 403 U.S. 88, 102 (1971).

In denying a Defendant's Motion to Dismiss in an employment discrimination case, this

Honorable Court reconciled the Supreme Court's decisions in *Twombly* and *Iqbal* with the

Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), and held

that at the motion to dismiss stage, a discrimination complaint must be "facially plausible."

*Mayale-Eke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 754 F. Supp. 2d 372, 377 (D.R.I.

2010). This Court concluded that in light of the well-developed body of law in discrimination

cases, it is unlikely that a Defendant would tell a Plaintiff that they took adverse actions against him based on race, and, therefore, Plaintiff must plead, "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal motive." *Mayale-Eke*, 754 F. Supp. 2d at 380-81 (citing *Twombly*, 55 U.S. at 545). This Court held that an employment discrimination complaint "satisfies the requirements of Rule 8(a) [if] it gives Defendants fair notice of the basis for Plaintiff's claims." *Mayale-Eke*, 754 F. Supp. 2d at 383 (citing *Swierkiewicz*, 534 U.S. at 514; *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. Ill. 2008)). Although this Court's ruling in *Mayale-Eke* involved employment discrimination, the Court should adopt and apply the same pleading standard for § 1985(3), as it is equally unlikely that Defendants would be caught making statements that Plaintiff's race factored into their failure to follow the law. *See, also, Rodriguez-Reyes v. Molina-Rodriguez, supra,* 711 F.3d at 56 (circumstantial evidence at pleading stage sufficient to show an actor's intent or motivation).

Plaintiff's VAC sets forth facts that would allow this Court to infer discrimination and put Defendants on fair notice of the basis for Plaintiff's claim. Plaintiff has pled that he is black. VAC ¶ 7. Plaintiff also pled that Defendants administered his Section 8 Voucher since 2003, and that Plaintiff and Defendants had several face to face interactions. VAC ¶¶ 51, 74, 78, 97-98. Based on the factual allegations in Plaintiff's VAC, this Court can reasonably infer that Defendants knew that Plaintiff is a black man. Furthermore, Plaintiff alleged that Defendants actions executing their conspiracy, namely coercing Plaintiff to relinquish his Section 8 Voucher under threat of criminal prosecution and terminating his Section 8 Voucher under the pretext of not reporting income when he had no income to report, were done because Plaintiff is black. VAC ¶¶ 158-159.

Plaintiff's VAC also sets forth numerous factual allegations that would allow this Court

to infer that Defendants conspired against Plaintiff and took steps to further the conspiracy. Plaintiff alleged that after receiving an anonymous complaint, Defendant Fagan spoke with either Leco or Overton prior to confronting Plaintiff at his food truck. VAC ¶ 70. Plaintiff alleges that Fagan and an employee of the WWHA went to Plaintiff's food truck in furtherance of the conspiracy to deprive Plaintiff of his Section 8 Voucher. VAC ¶¶ 73-74. Plaintiff alleges that Fagan and the employee of the WWHA took steps to further the conspiracy at the WWHA's office by threatening Plaintiff with criminal prosecution if he did not immediately write a letter relinquishing his Section 8 Voucher. VAC ¶¶ 79, 81. Plaintiff also alleged that Defendants hired a subordinate of D&V Mainsail, specifically Defendant Leco's subordinate, to conduct the informal hearing after their attempt to extort Plaintiff to surrender his Section 8 Voucher failed. VAC ¶¶ 89, 93. Furthermore, in furtherance of the conspiracy, the informal hearing officer determined that there was sufficient evidence to terminate Plaintiff's Section 8 Voucher prior to hearing Plaintiff's evidence. VAC ¶¶ 89-96. Even after hearing all the evidence, including HUD's definition of income, and reviewing Plaintiff's profit and loss statements showing that Plaintiff's business was operating at a loss, the hearing officer upheld the WWHA's decision to terminate Plaintiff's Section 8 Voucher. VAC ¶¶ 102, 104, 107. Thus, Plaintiff has pled sufficient facts to allow this Court to infer that two or more individuals conspired together and took steps in furtherance of the conspiracy to deprive Plaintiff of his Section 8 Voucher.

Plaintiff has also pled facts that would allow this Court to infer that Defendants intended to deprive Plaintiff of equal protection of the laws, that he and his property were damaged, and that he was deprived of exercising his rights and privileges as a United States Citizen. Plaintiff pled that instead of providing him proper notice and the right to a hearing as required by the Due Process Clause of the U.S. Constitution, Defendants threatened him with criminal prosecution

11

unless he relinquished his Section 8 Voucher, and that Plaintiff relinquished his Section 8 Voucher due to Defendants' threats. VAC ¶¶ 78-82, 149. Further, Plaintiff alleged that Defendants denied him his right to an impartial hearing officer, that the Defendants failed to prove by a preponderance of the evidence that Plaintiff had unreported income, and that despite the informal hearing officer concluding that Plaintiff had not received income, the hearing officer upheld Defendants' termination of Plaintiff's Section 8 Voucher. VAC ¶¶ 88-94, 96, 99, 100, 105, 107-108, 119. Plaintiff alleged that Defendants coerced Plaintiff to relinquish his Section 8 Voucher under threat of criminal prosecution because Plaintiff is black. VAC ¶ 158. Plaintiff further alleged that Defendants terminated Plaintiff's Section 8 Voucher under the pretext of Plaintiff's not reporting income, when Plaintiff had no income to report, because he is black. VAC ¶ 159. Finally, Plaintiff alleged, on information and belief, that Defendants treat similarly situated white participants in the Section 8 Voucher program differently from the way they treated Plaintiff, because Plaintiff is black. VAC ¶ 162.

Plaintiff also alleged that, contrary to the WWHA's Admin Plan, Defendants reported him the HUD Office of the Inspector General and the State of Rhode Island Department of Human Services for fraud, in an attempt to inflict additional harm on Plaintiff. VAC ¶¶ 115-116. Plaintiff also alleged that contrary to the WWHA Admin Plan, HUD regulations, and the due process clause, Defendants deprived him of his Section 8 Voucher without notice or hearing and again stopped paying Plaintiff's landlord on December 1, 2015, without the opportunity to be heard, thereby denying Plaintiff equal protection under the laws and depriving Plaintiff of his property interest in his Section 8 Voucher. VAC ¶¶ 122-136.

Throughout Plaintiff's VAC, Plaintiff pled facts that are sufficient to put Defendants on fair notice of the basis for Plaintiff's claim that Defendants conspired to deprive Plaintiff of his

Section 8 Voucher. As this Court must accept Plaintiff's allegations of fact as true at the Motion

to Dismiss stage, Plaintiff is not required to prove the veracity of his allegations of Defendants'

discriminatory intent. Plaintiff must only plead facts that would allow this Court to infer

discriminatory intent based on the facts leading up to and including Defendants' multiple

terminations of Plaintiff's Section 8 Voucher. Plaintiff's VAC puts Defendants on notice of the

basis for Plaintiff's claims and has pled enough facts to "raise a reasonable expectation that

discovery will reveal evidence of illegal motive." *Mayale-Eke*, *supra*, 754 F. Supp. 2d 372 at

380-81 (citing *Twombly*, 55 U.S. at 545).

### III.    Plaintiff States a Plausible Claim Under Title VI of the Civil Rights Act and Section 504 of the Rehabilitation Act as to Defendants Overton and Leco in Their Respective Capacities as Partners of D&V/Mainsail and as to Defendant WWHA.

Defendants seek dismissal of Plaintiff's claims under Title VI of the Civil Rights Act

(Count 4) and Section 504 of the Rehabilitation Act (Count 5) on the grounds that the

Defendants are individuals and, thus, cannot be held liable under these two statutes since

individuals are not considered recipients of federal funds.  Def. Mem. at 10-11. Defendants are

correct that said statutes do not provide relief against individuals in either their official or

individual capacities. *Foster v. Michigan*, 573 F. App'x 377, 389-90 (6th Cir. 2014) (upholding

dismissal of Title VI claims against individuals sued in their official capacity); *Rodgers v. Univ.

of Mo. Bd. of Curators*, 56 F. Supp. 3d 1037, 1047 (E.D. Mo. 2014) (upholding dismissal of Title

VI claims against individuals sued in their individual capacities); *Doe v. Town of Bourne*, No.

02-11363-DPW, 2004 U.S. Dist. LEXIS 10021, at *12-13 (D. Mass. May 28, 2004) (dismissing

claims asserted against individuals under Section 504 of the Rehabilitation Act). Thus, Counts 4

and 5 may be dismissed against Defendants Fagan and Starling, sued both individually and in her

and his official capacities, and Defendants Overton and Leco, sued in their individual capacities.

Dismissal of Counts 4 and 5 is not warranted as to Defendants Overton and Leco, sued in their respective capacities as partners in D&V/Mainsail, and WWHA, as Plaintiff alleged these entities are recipients of federal funds from the U.S. Department of Housing and Urban Development, VAC ¶157, and, thus, claims under Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act are actionable. *Foster v. Michigan*, 573 F. App'x 377, 389-90 (6th Cir. 2014) ("A plaintiff may only assert Title VI claims against 'the entity . . . receiving the financial assistance.'" (citing *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1357 (6th Cir. 1996)); *Koslow v. Pennsylvania*, 302 F.3d 161, 170 n.9 (3d Cir. 2002) (Quoting President Reagan's statement upon signing the Rehabilitation Act that said Act "subjects states, as a condition of their receipt of federal financial assistance, to suits for violation of federal laws prohibiting discrimination on the basis of handicap, race, age, or sex to the same extent as any other public or private entities.")

Both Title VI and the Rehabilitation Act provide for liability against partnership entities for acts of discrimination on the basis of race, color or national origin (Title VI) or handicap (Rehabilitation Act) in any "program or activity receiving Federal financial assistance." 42 U.S.C.S. §2000d; 29 U.S.C.S. § 794. Using identical language, both statutes define the phrase "program or activity" to include "all the operations of"

> (A)  an entire corporation, partnership, or other private organization, or an entire sole proprietorship--
> - (i)  if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
> - (ii)  which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or
>
> (B)  the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship.

42 U.S.C.S. § 2000d-4a(3); 29 U.S.C.S. § 794(3).

Plaintiffs allege that D&V/Mainsail is a partnership formed by Defendants Overton and Leco. VAC ¶ 11. Under Rhode Island law, a partnership lacks the capacity to be sued, and that claims against a partnership must be brought against the partners. *Nisenzon v. Sadowski*, 689 A.2d 1037, 1049 (R.I. 1997) ("Rhode Island law has long held that, without joining at least one partner to the action, '[a] partnership has no capacity to * * * be sued as such. Actions must be maintained by and against the partners.'" (citing 1 Kent, R.I. Civ. Prac. § 17.5 at 168 (1969)). Pursuant to F.R.C.P. 17(b)(3), the law of the state where the federal court sits determines whether an entity other than a corporation has capacity to sue or be sued. Thus, to properly sue the partnership entity D&V/Mainsail for violating Title VI and the Rehabilitation Act, the claim must be brought in the name of the partners, here, Defendants Overton and Leco in their capacity as partners of D&V/Mainsail.[1] Thus, Plaintiff's Title VI and Rehabilitation Act claims are properly brought against an entity that receives federal funds, as opposed to individuals, and the Court should deny Defendants' motion to dismiss as to Defendants Overton and Leco, sued in their capacity as partners of D&V/Mainsail.

WWHA is also an entity for which a claim under Title VI and the Rehabilitation Act lies. Plaintiff alleges that WWHA "is a public housing agency ("PHA"), created pursuant to R.I.G.L. § 45-26-1 *et seq.* for the purpose, *inter alia*, of providing safe and sanitary affordable housing opportunities for lower income families." VAC ¶ 8. PHAs can be sued under both Title VI and the Rehabilitation Act for discrimination in their programs or activities. *See, e.g., Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, No. 4:10CV00007, 2011 U.S. Dist. LEXIS 6890, at *29 (W.D. Va. Jan. 25, 2011) (Title VI): *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F.

---

[1] F.R.C.P. 17(b)(3) also permits suits against partnership entities in the name of the partnership where state law does not authorize such suits where the claim is based on "a substantive right existing under the United States Constitution or laws" such as Title VI or the Rehabilitation Act.  Plaintiff chose not to sue D&V/Mainsail in its own name as Plaintiff asserts claims under state law and F.R.C.P. 17(b)(3) would not apply to those claims.

Supp. 2d 307 (E.D.N.Y. 2012) (Rehabilitation Act); *ADAPT of Phila. v. Phila. Hous. Auth.*, No. 98-4609, 2000 U.S. Dist. LEXIS 11052 (E.D. Pa. July 26, 2000) (Rehabilitation Act); *Tinsley v. Kemp*, 750 F. Supp. 1001, 1003 (W.D. Mo. 1990) (Title VI). Thus, the Court should deny Defendant WWHA's motion to dismiss Plaintiff's claims under Title VI and the Rehabilitation Act.

## IV.     Count Six (Violation of the Fair Housing Act) Alleges a Plausible Claim of Intentional Racial Discrimination.

The Court should deny Defendants' Motion to Dismiss Plaintiff's claims under the Fair Housing Act as Plaintiff states a plausible claim of discrimination on the basis of race[2] and handicap. As explained below, Defendants' argument relies upon cases decided on summary judgment, where the Court is *not* mandated to accept Plaintiff's allegations as true and draw all inferences in the most favorable light to Plaintiff, as it must do when ruling on a motion to dismiss. *Cooper v. Charter Communs. Entm'ts I, LLC*, 760 F.3d 103, 106 (1st Cir. 2014). *See, also, Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014) (comparing the Court's role in deciding a motion to dismiss to weed out cases that do not warrant the laborious and expensive discovery process to the role in deciding a summary judgment motion where, after discovery has been largely completed, the movant must direct the court to specific, admissible evidence in the record in order to show that the other side could not win at trial.) Moreover, Defendants incorrectly maintain that to survive a motion to dismiss Plaintiff must plead facts establishing a prima facie case of racial discrimination. Def. Mem. at 13. The First Circuit has ruled that in civil rights cases, at the motion to dismiss stage, a Plaintiff need not plead a prima facie case as a prima facie case is an evidentiary standard not a pleading standard. *García-Díaz v.*

---

[2]Plaintiff erroneously omitted the statutory citation for unlawful racial discrimination in the terms, conditions and privileges of the rental of Plaintiff's dwelling, 42 U.S.C. §3604(b) and will seek leave to amend the complaint to add in the omitted citation.

*Cintrón-Suárez*, No. 14-1354 (GAG), 2015 U.S. Dist. LEXIS 97122, at *36-37 (D.P.R. July 23,

2015); *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013) ("Although a

plaintiff must plead enough facts to make entitlement to relief plausible in light of the

evidentiary standard that will pertain at trial — in a discrimination case, the prima facie standard

— she need not plead facts sufficient to establish a prima facie case.")

Defendants maintain that Plaintiff failed to sufficiently plead that he is handicapped,

citing *Jobst v. Camelot Vill. Ass'n,* 94 Fed. Appx. 356 (7th Cir. 2004) for the proposition that

receipt of Social Security benefits does not conclusively establish one is disabled under the Fair

Housing Act. Def. Mem. at 12. The *Jobst* case does not hold that a plaintiff has to plead more

facts beyond receipt of Social Security benefits to qualify as being disabled under the Fair

Housing Act to defeat a motion to dismiss. Rather, *Jobst* affirmed a summary judgment ruling in

favor of defendants because receipt of those benefits[3] does not conclusively establish he was

---

[3]The *Jobst* decision does not identify the type of Social Security benefits the Plaintiff received.  Here, Plaintiff received Supplemental Security Income ("SSI") from the Social Security Administration. VAC ¶54. Eligibility for SSI benefits requires that the recipient be disabled.  The term "disabled" is defined as follows:

(a)  (1) For purposes of this title [42 USCS §§ 1381 et seq.], the term ". . .  disabled individual" means an individual who--

 (3)  (A) Except as provided in subparagraph (C) [relating to persons under the age of 18], an individual shall be considered to be disabled for purposes of this title [42 USCS §§ 1381 et seq.] if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B)  For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

disabled under the Act.  *Id.*, at 358. Significantly, *Jobst's* holding has not been followed when the Social Security benefits received by a person seeking protection under federal handicap discrimination laws are of the type awarded to persons with disabilities such as Supplemental Security Income (SSI) which Plaintiff receives, or Social Security Disability Income (SSDI). *See, e.g., Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 338 (E.D.N.Y. 2012) ("As a general matter, in most cases, individuals who meet the definition of disability for purposes of receiving SSI or SSDI benefits also qualify as disabled under the federal disability statutes.") *Wiesner v. 321 W. 16th St. Assocs.*, 2000 U.S. Dist. LEXIS 12000, at *30 (S.D.N.Y. Aug. 16, 2000) ("[Plaintiff] who suffers from a psychological illness and is entitled to Social Security Disability Income payments, is deemed to be a disabled individual within the meaning of the Fair Housing Act.") Moreover, the Court should reject Defendants' reliance on *Caron v. City of Pawtucket,* 307 F. Supp. 2d 364 (D.R.I. 2004), as that case, too, was decided on summary judgment, not a motion to dismiss. Furthermore, *Caron's* holding that the mere fact that a person is elderly does not constitute a handicap is irrelevant to the instant litigation as Plaintiff has not pled he is disabled solely because he is elderly (which he is not).

At the motion to dismiss stage, Plaintiff's complaint need "include only 'a short and plain statement of the claim showing that the pleader is entitled to relief' [and s]uch a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz, supra,* 534 U.S. at 512 (citations omitted). Plaintiff's complaint meets the *Swierkiewicz* standard as to his claim of unlawful handicap discrimination. He alleges he is a

---

. . . (D)  For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

42 USCS § 1382c

disabled black citizen, VAC ¶ 7, and that since February 2015 his sole source of income is Supplemental Security Income in the amount of $905 per month. VAC ¶ 54. Since 2009, because of his disability, Plaintiff has received income from the Social Security Administration. VAC ¶56. He also alleges that for the past several years the Social Security Administration sent him letters encouraging Plaintiff to lawfully increase his income by working part time. VAC ¶ 58. Further, Plaintiff alleges that he was entitled, as a person with disabilities who was previously unemployed, to have his business income disregarded for the purposes of calculating his rent for the first twelve months of receiving that income, citing 24 C.F.R. 5.617, and that Defendants violated said regulation. VAC ¶¶ 113, 142. Instead of disregarding the business income, which Plaintiff alleges he never earned, Defendants terminated his Section 8 Voucher for having "fraudulent income." VAC ¶¶ 102-103; 107-109. Finally, Plaintiff alleges that even though there was no evidence of fraud and no evidence or determination of an overpayment of subsidy assistance by WWHA, Defendants attempted to inflict further punishment on Plaintiff by referring him to HUD's Office of Inspector General and the State of Rhode Island Department of Human Services for investigation of fraud. VAC ¶ 115. These facts and the allegation that Defendants violated 42 U.S.C. 3604(f)(2) give Defendants "fair notice of what the plaintiff's [handicap discrimination] claim is and the grounds upon which it rests." *Swierkiewicz, supra,* 534 U.S. at 512; 122 S.Ct. at 998, and that his claim of handicap discrimination is plausible to withstand a motion to dismiss. Moreover, since this litigation is at the motion to dismiss stage, the Court must infer from the facts pled that Plaintiff is in fact disabled for purposes of the Fair Housing Act, and allow Plaintiff to prove any additional facts to further substantiate that he qualifies as handicapped for purposes of the Fair Housing Act at trial or on a motion for summary judgment. *Cooper v. Charter Communs. Entm'ts I, LLC, supra.*

Plaintiff has also met his burden to plead a plausible claim of intentional racial discrimination under the Fair Housing Act. The Second Circuit Court of Appeals in *Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) set forth the necessary pleading elements for a claim of intentional racial discrimination to survive a motion to dismiss:

> There is no heightened pleading requirement for civil rights complaints alleging racial animus, *see Phillip v. Univ. of Rochester*, 316 F.3d 291, 298-99 (2d Cir. 2003), and this Court has found such claims sufficiently pleaded when the complaint stated simply that plaintiffs "are African-Americans, describe[d] defendants' actions in detail, and allege[d] that defendants selected [plaintiffs] for maltreatment 'solely because of their color.'" *Id.* at 298. We have upheld the vitality of this principle since *Twombly. See Iqbal*, 490 F.3d at 174-75.
>
> *Boykin v. KeyCorp, supra,* 521 F.3d at 215.

Contrary to Defendants' assertion that Plaintiff's "only allegations to establish any sort of discriminatory intent or result in the Amended Complaint are uncited statistics," Def. Mem. at 13, Plaintiff's allegations in the Amended Complaint satisfy the pleading requirements set forth in *Boykin* to withstand dismissal of his claim of intentional racial discrimination under the Fair Housing Act. Plaintiff alleges he is a black male citizen of the United States. VAC ¶ 7. He alleges in great detail how Defendants coerced Plaintiff to relinquish his Section 8 Voucher under threat of criminal prosecution. VAC ¶¶ 67-82. Next, Plaintiff alleges that after he rescinded the relinquishment of his Section 8 Voucher, Defendants proceeded to terminate said Voucher for failing to report income he never earned, in violation of HUD regulations and WWHA's Administrative Plan. VAC ¶¶ 83-4; 97-115; and 139-141. Plaintiff alleges that Defendants coerced Plaintiff to relinquish his Section 8 Voucher under threat of criminal prosecution because Plaintiff is black. VAC ¶ 158. Plaintiff further alleges that Defendants terminated Plaintiff's Section 8 Voucher under the pretext of Plaintiff's not reporting income, when Plaintiff had no income to report, because he is black. VAC ¶ 159. Finally, Plaintiff

alleges, on information and belief that Defendants treat similarly situated white participants in

the Section 8 Voucher program differently from the way they treated Plaintiff, because Plaintiff

is black. VAC ¶ 162. The "uncited statistics" pled in VAC ¶¶ 160 and 161 are additional facts to

substantiate that Defendants acted with racial animus towards Plaintiff, given the tiny percentage

of WWHA's Section 8 Voucher recipients who are black and that the overwhelming majority of

WWHA's public housing residents and Section 8 Voucher recipients are white. Plaintiff's claims

of intentional racial discrimination against Defendants satisfy the plausibility requirement to

survive dismissal and Defendants motion to dismiss Count Six should be denied in full.

## V.  <u>Count Nine (Defamation) Alleges a Legally Sufficient Claim</u>

Defendants maintain that Plaintiff's entire defamation claim be dismissed due to

Plaintiff's purported failure to allege slander or defamation per se. Contrary to Defendant's

argument, Plaintiff did adequately plead defamation per se, which, if proven, only means that

Plaintiff does not have to prove special damages. Even assuming *arguendo* that Plaintiff failed to

properly allege defamation per se, the defamation count survives the motion to dismiss, as

Plaintiff also alleges that he suffered damages, and thus pled all the necessary facts to support a

defamation claim.

To plead a cause of action for defamation, a plaintiff must allege "(a) a false and

defamatory statement concerning another; (b) an unprivileged publication to a third party; (c)

fault amounting at least to negligence on the part of the publisher; and (d) damages, unless the

statement is actionable irrespective of special harm. Restatement (Second) Torts § 558 (1977)."

*Lyons v. Rhode Island Public Employees Council 94*, 516 A.2d 1339, 1342 (R.I. 1986)) The

*Lyons* court also set forth how a communication alleged to contain defamatory language should

be analyzed to determine whether it is defamatory:

Words alleged to be defamatory must be read in the context of the publication in which they appear, taken as a whole. ... The suspect verbiage is to be construed in its plain and ordinary sense … presumed to have [been used] in their ordinary import in the community in which they are uttered or published.... However, words cannot be isolated from the circumstances in which they are uttered.… The decisive question is what the person … to whom the communication was published reasonably understood as the meaning intended to be expressed.

(Citations omitted.) *Id.* at 1343.

Lastly, "[a] plaintiff must show that the publication was defamatory on its face or by way of innuendo." *Marcil v. Kells*, 936 A.2d 208, 213 (R.I. 2007).

To substantiate his defamation claim, the Plaintiff alleges that on June 17, 2015, Fagan and an employee of the WWHA went to Sweet Daddy's Chicken, the food truck where the Plaintiff was working and "loudly and publicly accused the Plaintiff of committing fraud and threatened to have the Plaintiff put in jail unless he relinquished his Section 8 Voucher immediately." VAC ¶ 74. The false and defamatory statement Defendants made concerning Plaintiff was that Plaintiff committed fraud on the WWHA's Section 8 Voucher program by not reporting the income he allegedly earned working at Sweet Daddy's Chicken, and would go to jail for his actions. In VAC ¶ 186, Plaintiff alleges that the Defendants' statement was false and defamatory because Plaintiff never earned any income working at Sweet Daddy's Chicken and therefore did not commit fraud on WWHA. Moreover, Plaintiff's customers who heard Fagan's and WWHA's statement would have understood their statement as accusing Plaintiff of committing a crime, for which he could be sent to jail, when in fact, Plaintiff committed no crime.

Next, Plaintiff describes the unprivileged publication to a third party. VAC ¶ 185. Fagan and the other employee of WWHA made the statements "on the streets of West Warwick and in front of other customers, including the Plaintiff's next door neighbor." VAC ¶ 185. Plaintiff

clearly alleges the statements were made "with at least negligent intent." VAC ¶ 187. Plaintiff

alleges damages in VAC ¶ 189, and also alleges in the alternative that the statement accuses him

of a criminal act and is therefore actionable irrespective of proof of special harm. See VAC ¶

188. Plaintiff has alleged all necessary elements of defamation, and the Defendants' motion to

dismiss should be denied.

Defendants also claim that the Plaintiff's allegations failed to adequately plead damages.

However, Defendants apparently ignore VAC ¶ 189 where Plaintiff alleges that he "suffered

damages, including the termination of his Section 8 Voucher, lost business opportunities, loss of

reputation and standing, humiliation, mental anguish, anxiety, depression, and emotional

distress," as a result of the Defendants' defamatory statement. VAC ¶ 189. Defendants do not

even try to explain how the Plaintiff's allegations of "loss of reputation and standing,

humiliation, mental anguish, anxiety, depression, and emotional distress" fail to properly allege

damages. Instead, without presenting evidence, Defendants try to minimize the Plaintiff's

damages concerning his lost business opportunities and the Section 8 Voucher. Indeed, the cases

the Defendants rely on are post-trial decisions and do not apply to the sufficiency of facts pled at

the motion to dismiss stage. *See, e.g., Keven A. McKenna, P.C. v. Stone* (decision after hearing

on motion to disallow proof of claim); *Marcil*, *supra*, 936 A.2d 208 (post-trial motion for

judgment as a matter of law); *Lyons, supra,* 516 A.2d 1339 (post-trial motions for new trial and

for judgment as a matter of law). Clearly, Plaintiff's allegations of damages, which must be

accepted as true for the purposes of a motion to dismiss, are sufficient to set forth a claim for

defamation to survive a motion to dismiss. The amount of those damages remains an issue for

the trier of fact to resolve.

Plaintiff has, alternatively, alleged sufficient facts to establish that Defendants' false

statements about Plaintiff rose to the level of defamation or slander per se. Defendants contend

that Plaintiff's complaint fails to allege facts to support defamation per se. They claim that the

statement made by Fagan and the other employee of WWHA that accused the Plaintiff of

committing fraud was not actually accusing him of a crime and that the statement was also not

alleging conduct incompatible with his trade or profession. "To be actionable as slander per se--

without proof of special damages--the false statement must impute to the other: (1) a 'criminal

offense,' (2) a 'loathsome disease,' (3) a 'matter incompatible with his business, trade,

profession, or office,' or (4) a 'serious sexual misconduct.' Restatement (Second) Torts § 570 at

186 (1977)." *Marcil v. Kells*, 936 A.2d 208, 212 (R.I. 2007).

Regarding accusations of a criminal offense, Rhode Island courts have required the

defamatory words to allege "the essential elements of a crime" in order to be considered

defamatory *per se*. *See Id.*, at 214. However, courts do not require a detailed recitation of

allegations as Defendants argue.[4] Rather, a defamatory statement must be understood in the

context in which it was made and interpreted in the way that a hearer would reasonably have

understood the meaning intended to be expressed. *See Id.* at 212; *Lyons, supra,* 512 A.2d at

1343. Further, those essential elements need not be limited to the words actually uttered, but can

---

[4] Defendants rely on *Keven A. McKenna, P.C. v. Stone (In re Keven A. McKenna, P.C.),* 2011 Bankr. LEXIS 4690 (Bankr. D.R.I. Dec. 2, 2011), where a bankrupt debtor was accused of defaming a former employee by railing against the Worker's Compensation Court that it was "aiding and abetting a crook." The use of the word "crook" apparently referred to the former employee who made a claim against the bankrupt debtor in Worker's Compensation Court. The court held that while "crook" certainly has a negative connotation (and therefore would be considered defamatory if damages were proven) it was not sufficient, without more, to establish a claim of defamation per se. After an evidentiary hearing, the court stated, "[w]hile the word 'crook' certainly gives off a strong negative impression, Stone has not shown what, if any, misconduct McKenna was charging him with when 'read in the context of the publication in which' it appeared." *Id.* The court noted that the context of the statement was a negative expression of disgust directed at the Worker's Compensation Court more than the former employee. Unlike *Keven A. McKenna, P.C. v. Stone,* the context in this case fleshes out the spoken words, which allege all elements of a crime, and were therefore defamatory per se. Even viewing the word "fraud" devoid of context implies a more specific crime –making a false statement to obtain a benefit—than the use of the word "crook." Further, unlike *Keven A. McKenna, P.C. v. Stone,* which was decided after an evidentiary hearing, the court in this case is considering a motion to dismiss which requires all inferences to be drawn in Plaintiff's favor.

be shown by extrinsic factors including the context in which the statement was made and innuendo that clarifies the meaning of equivocal words. *Marcil*, *supra*, at 214.

Even in colloquial usage, the word "fraud" means making a false statement to obtain a benefit. According to www.merriam-webster.com, the simple definition of fraud is "the crime of using dishonest methods to take something valuable from another person." Because the defamatory statement preceded a demand that Plaintiff relinquish his Section 8 Voucher, VAC ¶ 74, a hearer would reasonably understand the Plaintiff was being accused of making a false statement to obtain his voucher. Because the defamatory statement was made at Sweet Daddy's Chicken while the Plaintiff was working, and because the statements were in the present progressive form (i.e. "you are committing fraud"), VAC ¶¶ 73-74, 184-185, a hearer would reasonably understand that the Plaintiff's working for the business was a fraudulent activity for which he could go to jail unless he relinquished his Section 8 Voucher immediately. VAC ¶ 74, 184. A reasonable hearer would understand this defamatory statement to charge Plaintiff with criminal fraud, not some lesser civil fraud,[5] because the Defendants threatened to put Plaintiff in jail. Therefore, Plaintiff set forth a legally sufficient claim not only for defamation based on damages which will be proven, but also for defamation actionable without proof of special harm, because Defendants accused him of a criminal act.

Defendants also argue that the statements are not accusing the Plaintiff of a matter incompatible with his business, trade, profession, or office. However, Defendants again ignore the context of their statements. The Defendants publicly stated "you are committing fraud" while the Plaintiff was working at the food truck business. The hearers would reasonably infer that the

---

[5] Defendants argue that because Plaintiff cited HUD's definition of fraud in paragraph 47-48 that the statement accused Plaintiff of committing a civil form of fraud. This argument is absurd because the Defendants publicly declared that Plaintiff "will go to jail," which a reasonable hearer would understand to be an accusation of a criminal act.

fraud alleged by Fagan and the other employee of WWHA was connected to the business, and would be dissuaded from buying from a fraudulent business. The defamatory statement was not isolated to a particular kind of fraud, and a hearer may reasonably understand the words to concern anything from the quality of the food, the cleanliness of the equipment, the use of the credit card processing machine, the nutrition facts, or any other implied or explicit statement made by the Plaintiff when operating the food truck business that may now be considered fraudulent.

In a last ditch effort to minimize liability for their outrageous conduct, Defendants argue that Plaintiff did not allege intentional or malicious conduct, which it claims is required to recover for punitive damages for either defamation or extortion. Defendant states the following: "By Plaintiff's own admission, Defendants' allegations were made with negligent intent. See VAC ¶ 187." Def. Mem. at 20. Contrary to Defendants' assertions, in VAC ¶ 187, the Plaintiff clearly alleges that Defendants' statements "were made with *at least* negligent intent." This language ("*at least negligent*") was used to track the elements of a defamation claim, as stated by the Supreme Court in *Lyons*, *supra*, 516 A.2d at 1342. The phrase "*at least negligent intent*" alleges either negligence or a higher levels of intent such as gross negligence, recklessness, willful and wanton conduct, or intentional or malicious conduct. The degree of intent used is a determination for the jury to make, and the propriety of punitive damages should be based on the evidence presented at trial. Plaintiff has properly pled a cause of action for defamation, and for punitive damages based on that claim, sufficient to withstand the Defendants' motion to dismiss.

## VI.   Count Ten (Extortion) Alleges a Legally Sufficient Claim

In Count Ten, the Plaintiff alleges a civil cause of action for extortion. Plaintiff's claim of extortion is grounded in Rhode Island General Laws § 9-1-2, which provides a civil cause of

action for damages caused by criminal acts. *See Lyons v. Scituate*, 554 A.2d 1034 (R.I. 1989)

("Section 9-1-2 creates a new right of action in that a victim can bring an action for damages for

injuries even if no criminal complaint for the crime or offense has been filed"). That statute

states the following:

> Whenever any person shall suffer any injury to his or her person, reputation, or
> estate by reason of the commission of any crime or offense, he or she may recover
> his or her damages for the injury in a civil action against the offender, and it shall
> not be any defense to such action that no criminal complaint for the crime or offense
> has been made; and whenever any person shall be guilty of larceny, he or she shall
> be liable to the owner of the money or articles taken for twice the value thereof,
> unless the money or articles are restored, and for the value thereof in case of
> restoration.

The crime of extortion "consists of two basic elements: '(1) an oral or a written threat to

harm a person or property, (2) accompanied by the intent to compel someone to do something

against his or her will.' *State v. Price*, 706 A.2d 929, 933 (R.I. 1998). The specified threat must

be made with the intent to extort in order to find an individual has committed extortion." *Marcil

v. Kells*, 936 A.2d 208, 214 (R.I. 2007) (citing the criminal extortion statute, Rhode Island

General Laws 1956 § 11-42-2). Civil liability for extortion may exist even without threats of

bodily harm, because Rhode Island's criminal "extortion statute[] contemplate[s] liability for

threats of non-bodily harm." See *Mello v. DaLomba*, 798 A.2d 405 (R.I. 2002) (overturning post-

trial entry of judgment as a matter of law on civil extortion count).

Plaintiff properly alleged all the elements of a civil cause of action for damages caused

by extortion. In VAC ¶ 191, Plaintiff alleges that "On June 17, 2015, Defendant Fagan and

another employee of the WWHA, on behalf of all Defendants, threatened that the Plaintiff would

be prosecuted for fraud and would go to jail unless he wrote a letter voluntarily relinquishing his

Section 8 Voucher." Plaintiff alleges that he did not want to relinquish his Section 8 Voucher,

but did so due to the threats. VAC ¶¶ 192-193. Plaintiff alleges that he suffered numerous

substantial damages in VAC ¶ 195.

The Defendants do not dispute that the Plaintiff alleges that he involuntarily surrendered his Section 8 Voucher due to threats made by the Defendants. The only argument the Defendants raise in their motion to dismiss, without citing any legal authority, is that the Plaintiff "nullified" any injury caused by the relinquishment of his Section 8 Voucher when he revoked the surrender of his voucher two days after he relinquished it because of Defendants' threats. Def. Memo. at 15. However, the Defendants ignored VAC ¶ 195, where Plaintiff clearly alleges that he "suffered damages, including the termination of his Section 8 Voucher, lost business opportunities, loss of reputation and standing, humiliation, mental anguish, anxiety, depression, and emotional distress." Even if Plaintiff revoked the surrender of his voucher, that revocation does not, in any way undo the humiliation, mental anguish, anxiety, depression and emotional distress that the Plaintiff suffered as a result of Defendant's threat of criminal prosecution which led to Plaintiff's initial relinquishing of his voucher. Moreover, when Defendants' attempt to extort Plaintiff's Section 8 Voucher failed, Defendants continued to inflict injury on Plaintiff. Defendants subsequently terminated his voucher without any legal basis, VAC ¶¶ 139-144, and the hearing officer referenced the Plaintiff's relinquishment of his Section 8 Voucher and appears to have relied on it when rendering his decision. VAC, Exhibit E.

Defendants also maintain that Plaintiff insufficiently pled facts to be entitled to punitive damages for their acts of extortion. Defendants are correct that punitive damages are recoverable only on a showing of intentional and malicious conduct towards Plaintiff. Plaintiff's allegations satisfy this requirement. Defendants made two attempts the same day to extort Plaintiff's voucher – in front of customers being served at Sweet Daddy's Chicken and at WWHA's office. VAC at ¶ 74, 79. Although the complaint does not expressly state these actions were intentional,

28

at the motion to dismiss stage the court should draw the inference that these two efforts were intentional and not accidental. Moreover, the maliciousness of Defendants' actions are clearly pled. Even after Plaintiff revoked the surrender of his voucher, Defendants persisted with their attempt to obtain his voucher by terminating said voucher without any legal basis, VAC at ¶ 89, 99-101, 139-144. Then, to add insult to injury, referred Plaintiff to HUD Office of Inspector General and Rhode Island Department of Human Services for further investigations for fraud even though no fraud ever occurred. VAC at ¶ 115-118.

Lastly, Defendants claim Plaintiff pled only negligent intent. However, as explained above at page 26, the Plaintiff pled that the Defendants' actions were made with "*at least negligent*" intent. This allegation was made to track the elements of a cause of action for defamation as stated by the Rhode Island Supreme Court in *Lyons, supra*, and encompasses not only negligence, but also gross negligence, recklessness, gross recklessness, wanton and willful conduct, and intentional or malicious conduct.

Plaintiff set forth a legally sufficient cause of action for extortion. Plaintiff respectfully requests the Motion to Dismiss be denied as to Count Ten.

**WHEREFORE,** the Plaintiff respectfully requests this Court to deny the Defendants' Motions to Dismiss, except as to the following:

(a) Counts Four and Five may be dismissed against Defendants Fagan and Starling, sued both individually and in her and his official capacities, and Defendants Overton and Leco, to the extent sued in their individual capacities only; and

(b) Counts Seven and Eight may be dismissed against Defendants Overton, Leco, and Fagan, as these counts are not directed against those Defendants.

Leveland Brown

By his attorneys,

/s/ Jeffrey C. Ankrom
Jeffrey C. Ankrom, Esq. (#7663)
Rhode Island Legal Services, Inc.
56 Pine St., Fourth Floor
Providence, RI 02903
(401) 274-2652 ext.138
(401) 453-0310 fax
jankrom@rils.org


/s/ Eric Bither
Eric Bither, Esq. (#8910)
Rhode Island Legal Services, Inc.
56 Pine St., Fourth Floor
Providence, RI 02903
(401) 274-2652 ext.141
(401) 453-0310 fax
ebither@rils.org


/s/ Steven Fischbach
Steven Fischbach, Esq. (#3259)
Rhode Island Legal Services, Inc.
56 Pine St., Fourth Floor
Providence, RI 02903
(401) 274-2652 ext.182
(401) 453-0310 fax

sfischbach@rils.org

## CERTIFICATE OF SERVICE

This is to certify that on February 5, 2016, I served a copy of the Memorandum of Law in

Support of the Objection through the court's electronic filing system to the following counsel:

Marc DeSisto, 211 Angell St, Providence, RI 02906

Andrew Ferguson, 175 Federal Street, Boston, MA 02110

/s/ Jeffrey C. Ankrom, Esq.
Jeffrey C. Ankrom, Esq.

30