```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
LEVELAND BROWN,                     )
                                    )
          Plaintiff,                )
                                    )
     v.                             )   C.A. No. 15-437 S
                                    )
WEST WARWICK HOUSING AUTHORITY,     )
CINDY WHITE OVERTON and RICHARD     )
LECO, individually and              )
in their capacities as partners of  )
D&V/MAINSAIL, KATIE FAGAN, and      )
MARC STARLING, individually and in  )
his official capacity as executive  )
director of the West Warwick        )
Housing Authority,                  )
                                    )
          Defendants.               )
_____ )
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

This case arises from attempts by the West Warwick Housing Authority ("WWHA") and D&V/Mainsail ("D&V") — a former WWHA contractor — to revoke Plaintiff Leveland Brown's ("Plaintiff") Section 8 housing voucher. According to Plaintiff's Amended Complaint, Defendants' revocation attempts violated a number of federal statutes and regulations, infringed on Plaintiff's constitutional rights, defamed Plaintiff, and amounted to extortion. Defendants have moved to dismiss each of the claims against them. (See ECF Nos. 18, 20.) For the following reasons, Defendants' motions are GRANTED IN PART and DENIED IN PART.

I.   Background[1]

Plaintiff has been a member of the Section 8 voucher program since 2003. (Am. Compl. ¶ 50, ECF No. 16.) In May 2015, Plaintiff started a food truck business, Sweet Daddy's Chicken, with the help of Dianne Cummiskey, who agreed to finance Plaintiff's venture. (Id. ¶¶ 59, 66.) Anticipating the start of his business, Plaintiff inquired at his annual WWHA income certification meeting about the proper way to report the food truck to WWHA. (Id. ¶ 63.) According to his Senior Housing Specialist, he would only need to report the business when he started to receive an income from it. (Id. ¶ 64.) Since Plaintiff had not earned any net income from the business, he never disclosed it to WWHA. (Id. ¶ 66.)

On June 17, 2015, someone alerted Katie Fagan, a former D&V employee assigned to WWHA, that Plaintiff was defrauding WWHA through the food truck. (Id. ¶¶ 67-69.) Fagan raised the allegation with D&V, and they agreed on a plan to handle it. (Id. ¶ 70.) Fagan called Plaintiff and asked him to come to WWHA's office; when Plaintiff refused, Fagan, with a WWHA employee, confronted Plaintiff at his food truck. (Id. ¶¶ 73-74.) In front of Plaintiff's customers and neighbors, Fagan and the employee

---

[1] Since this is a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court treats the factual allegations set forth in the Amended Complaint as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

accused Plaintiff of committing fraud, threatened to have Plaintiff thrown in jail, and demanded Plaintiff relinquish his voucher. (Id. ¶ 74.) To end the confrontation, Plaintiff agreed to meet with Fagan at WWHA's office later that afternoon. (Id. ¶ 77.) At the appointment, Plaintiff claims Fagan and a WWHA employee continued to threaten him with jail and demand that he relinquish his housing voucher. (Id. ¶¶ 77-81.) Scared of Fagan's threats, Plaintiff complied with her request and agreed to relinquish his voucher. (Id. ¶ 82.)

Two days later, however, Plaintiff had a change of heart and sent WWHA a letter revoking his relinquishment. (Id. ¶ 83.) WWHA responded by sending Plaintiff a letter informing him that it was terminating his voucher because he "earned income that [he] knowingly did not report to [the WWHA], income from Sweet Daddy's Chicken." (Id. ¶ 84.) Plaintiff requested and received an informal hearing to dispute the termination. (Id. ¶¶ 86-87.) The hearing officer upheld the termination and WWHA stopped paying Plaintiff's voucher on September 30, 2015. (Id. ¶ 119.) As a result, Plaintiff paid the entire amount of his rent for the month of October. (Id. ¶ 120.)

On November 4, 2015, after Plaintiff filed the present action, WWHA's new Executive Director, Mark Starling, informed Plaintiff that WWHA had reinstated his voucher effective November 1. (Id. ¶ 122.) WWHA also scheduled an interim examination to verify

Plaintiff's income for November 9. (Id.) Plaintiff's attorney arranged for the examination to be rescheduled twice. (Id. ¶¶ 123, 127-28.) Nevertheless, on November 24, 2015, WWHA informed Plaintiff that his voucher would be suspended effective December 1, 2015 due to his failure to appear for the interim examination. (Id. ¶ 129.) Despite this notice, WWHA continues to pay Plaintiff's voucher.

II. Standard of Review

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must view the facts contained in the pleadings in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). To survive the motion, however, plaintiff must present "factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Put another way, "[w]hile detailed factual allegations are not required, 'a formulaic recitation of the elements of a cause of action' is not sufficient." DeLucca v. Nat'l Educ. Ass'n of Rhode Island, No. C.A. 13-155L, 2015 WL 2037547, at *1 (D.R.I. May 5, 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

III. Discussion

    A.    Plaintiff's claims are not moot.

Although Defendants' briefs are not pillars of clarity, they appear to argue that Counts 1, 2, 7 and 8 should be dismissed on mootness grounds.  Specifically, Defendants assert that Plaintiff has already received the relief he requests – reinstatement of his voucher and reimbursement for any rent he paid due to his voucher revocation.  Defendants' assertions are incorrect.

The Amended Complaint alleges that (1) Plaintiff's voucher was revoked effective September 1, 2015; (2) Plaintiff paid his full rent for September because his voucher was revoked; (3) Plaintiff's voucher was reinstated on November 1, 2015; (4) Plaintiff's voucher was suspended again on December 1, 2015; and (5) notwithstanding this suspension, WWHA continues to pay Plaintiff's voucher.  Based on these allegations, the Amended Complaint alleges at least two injuries that this Court can remedy: Plaintiff's lost rent for September 2015 and the uncertain status of Plaintiff's voucher.  Thus, Plaintiff has alleged an "actual injury traceable to the defendant[s] and likely to be redressed by a favorable judicial decision." Johansen v. United States, 506 F.3d 65, 69 (1st Cir. 2007) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990)).  Plaintiff's claims are not moot.

B.  Plaintiff has pleaded sufficient facts to support his discrimination claims.

Defendants also argue that Plaintiff's conspiracy claim (Count 3) and FHA claim (Count 6) fail because Plaintiff does not allege facts to support his discrimination allegations. Though a close call, Defendants' argument fails.

Defendants focus on Plaintiff's allegations that he is black, disabled, and lost his housing voucher because of these characteristics.[2] Defendants correctly argue that if Plaintiff's Amended Complaint ended with these allegations, he would have failed to state a claim upon which relief could be granted. They are the type of allegations that merely parrot the elements required to make a claim for discrimination, which is insufficient

---

[2] Defendants also argue that Plaintiff has not adequately pleaded that he is, in fact, disabled. In support, Defendants point out that the Plaintiff pleads two facts relating to his disability: that he is disabled and that "because of his disability, he receives income from the Social Security Administration." Defendants argue that these facts are conclusory and do not establish Plaintiff's disability. In support, Defendants cite to Jobst v. Camelot Vill. Ass'n, Inc., 94 F. App'x 356 (7th Cir. 2004), which held that receipt of social security benefits does not conclusively establish a disability. Id. at 357-58. But, Jobst was decided in the context of a motion for summary judgment. "As a general matter, in most cases, individuals who meet the definition of disability for purposes of receiving SSI or SSDI benefits also qualify as disabled under the federal disability statutes," Sinisgallo v. Town of Islip Hous. Auth., 865 F. Supp. 2d 307, 338 (E.D.N.Y. 2012) (internal citations omitted), and this must be true at least for purposes of deciding a 12(b)(6) motion. Thus, while the outcome might differ at summary judgment, at the pleading stage, Plaintiff has plausibly alleged he is disabled.

to state a plausible claim. See Reilly v. Cox Enters., Inc., No. CA 13-785S, 2014 WL 4473772, at *8 (D.R.I. Apr. 16, 2014) (conclusory allegation that plaintiff was fired not for the reasons given by Defendants, but because of her age and gender, and that she was treated differently than similarly-situated male counterparts amounted to "formulaic recitation[s]" of elements of the claim insufficient to survive a motion to dismiss); Williams v. Shinseki, Civil Action No. 11-40030-TSH, 2013 WL 1336360, at *4 (D. Mass. Mar. 29, 2013). But Defendants' argument overlooks the other facts contained in Plaintiff's Amended Complaint: that Defendants (1) did not follow their regulations and procedures when they revoked Plaintiff's voucher; and (2) changed the rules they applied to Plaintiff's voucher when they revoked his voucher for not reporting his food truck business. At this early stage in the proceedings, drawing all inferences in Plaintiff's favor, these additional facts push Plaintiff's discrimination claims across the line — albeit only slightly — from being merely possible to plausible. See Mayale-Eke v. Merrill Lynch, 754 F. Supp. 2d 372, 382-83 (D.R.I. 2010) (allegations that defendants imposed new performance standards on plaintiff not imposed on other non-Muslim employees and was terminated for not meeting those new standards entitled plaintiff to an inference supporting his discrimination claim at the pleading stage); see also Doe v. Brown Univ., C.A. No. 15-144 S, 2016 WL 715794, at *7-8 (D.R.I. Feb. 22, 2016)

(distinguishing between evidence required for discrimination claims to survive a motion to dismiss and summary judgment).

    C.    Plaintiff has adequately pleaded the other elements of his conspiracy claim.

In addition to attacking Plaintiff's allegations of discrimination, Defendants assert that Plaintiff's conspiracy claim should fail because Plaintiff has not pleaded two of the claim's other elements: (1) a conspiracy; and (2) an overt act in furtherance of the conspiracy. Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (setting out the elements of conspiracy under 42 U.S.C. § 1985(3)); Henrikson v. Town of E. Greenwich, ex rel. Raposa, 94 F. Supp. 3d 180, 193-94 (D.R.I. 2015) (same). Specifically, Defendants argue that Plaintiff does not "set forth anything concerning the who, what, when, where, how and why of any alleged conspiracy." (Defs.' Reply 5, ECF No. 22-3.) Defendants' assertion is incorrect.

Plaintiff alleges that Fagan, Overton and/or Leco discussed Plaintiff's housing voucher and "agreed on a plan to handle the unsubstantiated accusations that Plaintiff was committing fraud on the WWHA." (Am. Compl. ¶ 70.) Plaintiff goes on to detail the plan: Fagan and a WWHA employee threatened Plaintiff until he voluntarily surrendered his voucher (Id. ¶¶ 72-82), and then, when Plaintiff withdrew his relinquishment, WWHA conducted a sham hearing to formally revoke it (Id. ¶¶ 89-106). Based on these

8

allegations, Plaintiff alleges a conspiracy and an overt act to deprive Plaintiff of his voucher. His claim, therefore, survives Defendants' motions to dismiss.

>   D.  Plaintiff has alleged Defendant D&V receives federal funds for the purposes of his Title VI and Rehabilitation Act Claims.

Defendants also argue that Plaintiff's Title VI (Count 4) and Rehabilitation Act (Count 5) claims should be dismissed against D&V, Leco, and Overton because D&V does not receive federal funds. Defendants concede that Plaintiff pleaded this element in his Amended Complaint, but urge the Court to overlook Plaintiff's allegation in favor of affidavits Defendants submit asserting that D&V does not, in fact, receive federal funds. The Court declines to consider Defendants' affidavits. To do so would require the Court to convert these motions to ones for summary judgment, which would be inappropriate at this time. Defendants are free to reassert their federal funding argument should the parties move for summary judgment.

>   E.  Plaintiff has alleged a defamation claim.

Next, Defendants argue Plaintiff's defamation claim should be dismissed because he does not properly plead damages. According to Defendants, Plaintiff does not allege that he suffered any damages, an essential element of a slander claim such as this one. Marcil v. Kells, 936 A.2d 208, 212 (R.I. 2007) (stating the elements of a defamation claim under Rhode Island law). And

9

Defendants argue that Plaintiff's allegation do not amount to slander per se, a type of defamation that would excuse Plaintiff's failure to plead damages. See id. Both of Defendants' arguments are without merit.

Plaintiff's defamation claim arises from Fagan and another WWHA employee's public accusation that Plaintiff was defrauding WWHA. Defendants assert that this accusation did not damage Plaintiff because Plaintiff admits in his Amended Complaint that he never made any money from his food truck. Defendants posit that this admission makes it impossible for Plaintiff to have suffered damages. Defendants' logic is flawed. As Plaintiff points out, that his business might have been struggling does not affect whether Fagan's comment drove away business and affected his reputation in the community, allegations contained in Plaintiff's Amended Complaint. (See Am. Compl. ¶ 189.) Plaintiff has pleaded damages sufficient to sustain his defamation claim.

Yet, even if Plaintiff did not plead actual damages, his defamation claim could still proceed. Plaintiff alleges that Defendants accused him of committing fraud, going so far as to threaten Plaintiff with jail time unless he relinquished his voucher. Plaintiff, thus, alleges that Fagan falsely accused him of a crime, a comment that constitutes defamation per se. Marcil, 936 A.2d at 212 (noting that the defamation per se categories under Rhode Island law are false statements involving a criminal offense,

loathsome disease, matter incompatible with his business, trade or profession, or serious sexual misconduct).[3]

F.    Plaintiff has alleged an extortion claim.

As with his defamation claim, Defendants move to dismiss Plaintiff's extortion claim on the claim's damages element.[4] Defendants appear to concede that, at this stage, Plaintiff has alleged that Fagan extorted Plaintiff's housing voucher from him on June 17, 2015 by compelling him to voluntarily relinquish it. But Defendants argue that Plaintiff did not suffer any damages from this alleged extortion because Plaintiff revoked his relinquishment before WWHA actually terminated his voucher. Defendants' argument is, again, flawed.  Contrary to Defendants'

---

[3] Defendants try to sidestep Fagan's alleged accusation of fraud by citing to cases that hold defamation per se only arises for accusations of criminal conduct when the comments include all elements of a crime or claim.  This requirement, however, only applies to instances where the comment does not expressly accuse the victim of a crime.  See Marcil v. Kells, 936 A.2d 208, 214 (R.I. 2007) ("[F]or [] statements to be defamatory per se, a defendant need not state the actual crime committed, if the elements are alleged.")  Here, Fagan stated that Plaintiff committed fraud.  Consequently, even though Fagan did not spell out each element of fraud in her comment, the statement still meets the requirements for per se defamation because she accused him of the crime.

[4] For Plaintiff's extortion claim to survive, Plaintiff must allege (1) an oral or written threat to harm Plaintiff or his property; and (2) that Defendants intended to compel Plaintiff to do something against his or her will.  State v. Price, 706 A.2d 929, 933 (R.I. 1998).  Further, to sustain his civil extortion claim, Plaintiff must allege damages.  See R.I. Gen. Laws § 9-1-2; Lyons v. Scituate, 554 A.2d 1034 (R.I. 1989).

assertions, Plaintiff does allege that Defendants' extortion injured him; he claims it resulted in "the termination of his Section 8 voucher, lost business opportunities, loss of reputation and standing, humiliation, mental anguish, anxiety, depression, and emotional distress." (Am. Compl. ¶ 195.) Defendants do not cite to any authority suggesting that these types of damages are insufficient to support a civil extortion claim under Rhode Island law. It is, of course, an open question as to whether these damages will stand up on summary judgment or trial; but that is for another day. Consequently, the Court denies Defendants' motion on this claim.

G.  Plaintiff's punitive damages claims may proceed.

Defendants also move to dismiss Plaintiff's punitive damages allegations under both his defamation and extortion claims. As Defendants correctly point out, punitive damages claims "must be based upon <u>intentional</u> and <u>malicious</u> conduct toward the plaintiff. Conduct that is merely reckless does not justify punitive damages." <u>Wilson Auto Enters., Inc. v. Mobil Oil Corp.</u>, 778 F. Supp. 101, 107 (D.R.I. 1991) (emphasis in original). While Defendants argue that Plaintiff has only pleaded negligent conduct, this again misstates the allegations in Plaintiff's Amended Complaint. As detailed above, Plaintiff has alleged that Defendants developed a plan to knowingly deprive Plaintiff of his Section 8 voucher.

12

Thus, it is premature to decide what level of intent Defendants possessed.

> H.  The individual defendants should be dismissed from Counts 4 and 5.

Finally, Defendants move to dismiss Plaintiff's Title VI claim (Count 4) and Rehabilitation Act claim (Count 5) as to Overton, Leco, Fagan, and Starling in their individual capacities, and as to Starling in his official capacity.  Plaintiff concedes that these counts cannot be maintained against individuals sued in their individual or official capacities.  See Pollard v. Georgetown Sch. Dist., 132 F. Supp. 3d 208, 229-30 (D. Mass. 2015) ("individuals cannot be held liable under Title VI" (quoting Thomas v. Salem State Univ. Found., Inc., No. 11-cv-10748-DJC, 2011 WL 5007973, at *6 (D. Mass. Oct. 18, 2011)); Doe v. Town of Bourne, No. Civ.A.02-11363-DPW, 2004 WL 1212075, at *3 (D. Mass. May 28, 2004) ("individuals in their individual capacities are not liable under § 504 [of the Rehabilitation Act]").  Consequently, Counts 4 and 5 are dismissed as to Overton, Leco, Fagan, and Starling in their individual capacities and as to Starling in his official capacity.

Counts 4 and 5, however, are not dismissed against Overton and Leco as partners of D&V.  Under Rhode Island law, "without joining at least one partner to the action, a partnership has no capacity to be sued as such.  Actions must be maintained by and

13

against the partners." <u>Nisenzon v. Sadowski</u>, 689 A.2d 1037, 1049 (R.I. 1997) (internal citation and quotation marks omitted). While Fed. R. Civ. P. 17(b)(3) expressly permits partnerships to sue and be sued under their common name to enforce federal laws - even where not permitted by state law - it does not require parties to sue the partnership under its common name. <u>See</u> Fed. R. Civ. P. 17(b)(3). Here, Plaintiff brings both federal and state law claims against Defendants. Consequently, the Court sees no point in requiring Plaintiff to bring a suit against D&V for Plaintiff's federal claims and against Overton and Leco as D&V's partners for Plaintiff's state law claims. Counts 4 and 5 remain against Overton and Leco purely as partners in D&V.

IV. Conclusion

For the forgoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss. The Court GRANTS the motions as to Counts 4 and 5 against Overton, Leco, Fagan, and Starling in their individual capacities and as to Starling in his official capacity. The Court DENIES the remainder of Defendants' motions.

IT IS SO ORDERED.

*[signature]*

William E. Smith
Chief Judge
Date: June 10, 2016